**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

BANK MIDWEST, a division of NBH Bank,

Plaintiff,

v.

TIG REAPER LLC, REAPER TIME NJ 1 LLC, REAPER TIME PA 1 LLC, and REAPER TIME PA 2 LLC,

Defendants.

Case No. ________________

**VERIFIED COMPLAINT**

Bank Midwest, a division of NBH Bank ("Plaintiff" or "Lender"), files this Complaint against TIG REAPER LLC, REAPER TIME NJ 1 LLC, REAPER TIME PA 1 LLC, REAPER TIME PA 2 LLC (collectively, "Borrower" or "Defendants"), showing the Court as follows:

**Parties, Jurisdiction and Venue**

1. Plaintiff is a division of NBH Bank, a Colorado corporation with its principal place of business at 7800 E Orchard Road, Suite 300, Greenwood Village, Colorado.

2. TIG REAPER LLC is a Delaware limited liability company. TIG REAPER LLC may be served with process by serving its registered agent, Manisha Patel, at 211 S Main Street, Suite 101, Newark, Delaware 19711.

3. REAPER TIME NJ 1 LLC is a New Jersey limited liability company. REAPER TIME NJ 1 LLC may be served with process by serving its registered agent, Jiger Patel, at 3542 Broidy Road, McGuire AFB, New Jersey 08641.

4. REAPER TIME PA 1 LLC is a Pennsylvania limited liability company. REAPER TIME PA 1 LLC may be served with process by serving its registered agent, Manisha Patel, at 313 US Highway 202, Flemington, NJ 08822.

5. REAPER TIME PA 2 LLC is a Pennsylvania limited liability company. REAPER TIME PA 2 LLC may be served with process by serving its registered agent, Manisha Patel, at 406 Executive Dr, Langhorne, Pennsylvania 19047.

6. In the Loan Agreement (defined below), Borrower agreed to accept service by mail to Borrower, at 416 S Ridge Ave, Middletown, Delaware 19709 with a copy to Albert M. Belmont, III, Bochetto & Lentz, P.C., 1524 Locust Street, Philadelphia, Pennsylvania 19102. (Loan Agreement, § 8.12.)

7. In the Loan Agreement, Borrower agreed to the jurisdiction and venue of this Court. Specifically, Borrower agreed that "nothing in this Agreement shall limit or restrict Lender's right to commence any proceeding in the federal or state courts located in the state in which a particular Site is located to the extent Lender deems such proceeding necessary or advisable to exercise remedies available under any Loan Document." (*Id.*)

8. Borrower further "irrevocably waive[d] any objection, including any objection to the laying of venue or based on the grounds of forum non conveniens, that any of them may now or hereafter have to the bringing of any such action or proceeding in such jurisdictions." (*Id.*)

9. A Borrower site is located at 1731 Chestnut Street, Philadelphia, Pennsylvania.

10. Accordingly, Defendants agreed to jurisdiction and venue in this Court.

11. Additionally, pursuant to 28 U.S.C. § 1332, Defendants are subject to the jurisdiction and venue of this Court because Defendants are not citizens of any State of which Plaintiff is a citizen such that there is complete diversity between the parties, and the amount in

controversy exceeds $75,000, exclusive of interest and costs. Each entity comprising Borrower is owned by Manisha Patel and Jiger Patel, both of whom are domiciled in Pennsylvania. Plaintiff is domiciled in Colorado.

12. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this Court.

## STATEMENT OF RELEVANT FACTS

### The Loan Documents

13. In August 2024, Plaintiff made a loan to TIG Reaper LLC in the original principal amount of $1,650,000.00 (the "Term Loan") evidenced by that certain Term Loan A Note dated August 15, 2024 (as amended and/or modified the "Term Note") executed by TIG Reaper LLC in favor of Plaintiff. A true and correct copy of the Term Note is attached hereto as **Exhibit A**.

14. Also in August 2024, Plaintiff made a loan to TIG Reaper LLC in the original principal amount of $8,350,000.00 (the "DLOC Loan", together with the Term Loan, the "Loans") evidenced by that certain DLOC Note (the "DLOC Note", together with the Term Note, the "Notes") executed by TIG Reaper LLC in favor of Plaintiff. A true and correct copy of the DLOC Note is attached hereto as **Exhibit B**.

15. On or about August 15, 2024, TIG Reaper LLC and Plaintiff executed that certain Loan Agreement (the "Loan Agreement"). A true and correct copy of the Loan Agreement is attached hereto as **Exhibit C**.

16. On or about August 15, 2024, TIG Reaper LLC executed that certain Security Agreement (the "Security Agreement") in favor of Plaintiff and granted Plaintiff a first-priority security interest in all of TIG Reaper LLC's assets. A true and correct copy of the Security Agreement is attached hereto as **Exhibit D**.

17. On or about November 14, 2025, Borrower, Manisha Patel ("Guarantor") and Plaintiff executed that certain Loan Assumption and First Modification Agreement (the "Modification Agreement", together with the Term Note, DLOC Note, Loan Agreement, Security Agreement and all documents executed in connection therewith and/or related thereto, together with all amendments and/or modifications thereof are collectively, the "Loan Documents"). A true and correct copy of the Modification Agreement is attached hereto as **Exhibit E**.

18. Pursuant to the Modification Agreement, Reaper Time NJ 1 LLC, Reaper Time PA 1 LLC and Reaper Time PA 2 LLC (collectively, "Additional Borrower") agreed to, jointly and severally with TIG Reaper LLC, (a) assume all obligations, liabilities, covenants, representations and warranties of TIG Reaper LLC under the Loan Documents, (b) assume and pay the amounts owed on the Loans, and (c) assume, be bound by and liable for, comply with and perform all duties, obligations, provisions and covenants of "Borrower" or "Debtor" under the Loan Documents. (Modification Agreement, § 2.1.) Additional Borrower granted to Plaintiff a lien, encumbrance and security interest in and to all of the Collateral owned by Additional Borrower. (*Id.*, § 2.2.)

19. As a result of the Modification Agreement, TIG Reaper LLC and Additional Borrower are jointly and severally the "Borrower", "Assignor", "Grantor", and "Debtor" under each of the Loan Documents as if TIG Reaper LLC and Additional Borrower had executed and delivered each of the Loan Documents, and are jointly and severally liable as "Debtor" under the Security Agreement. (*Id.*, § 2.3.)

## **The Defaults**

20. Pursuant to the Loan Agreement, Borrower is required to do the following:

a. pay all taxes prior to delinquency (Loan Agreement, § 4.3.)

b. provide Lender with complete Financial Statements within 45 days of each Fiscal Quarter, including a Compliance Certificate (Loan Agreement, §§ 4.15(a)(i), 4.15(c));

c. deliver to Lender bank and brokerage statements evidencing the liquidity of Guarantor for each Fiscal Quarter (Loan Agreement, § 4.15(a)(ii);

d. together with Guarantor, maintain aggregate Liquid Assets of at least $1,500,000, as confirmed by a Compliance Certificate delivered by Borrower pursuant to Section 4.15(g) of the Loan Agreement (Loan Agreement, § 4.16(c));

e. maintain Lender as its principal depository bank, including for the maintenance of operating, administrative, cash management, collection activity and other deposit accounts for the conduct of Borrower's business (Loan Agreement, § 4.21); and

f. not create, incur, assume, permit to exist, or otherwise become or remain directly or indirectly liable with respect to an Indebtedness, other than the Obligations and trade indebtedness incurred in the ordinary course of business (Loan Agreement, § 5.12.)

21. Under the Loan Agreement, an Event of Default occurs when, among other things, any Credit Party fails to observe any of the covenants or obligations of the Loan Agreement or any of the other Loan Documents. (Loan Agreement, § 6.1(c).)

22. On July 20, 2026, Lender notified Borrower and Guarantor that they were in default under the Loan Documents. A true and correct copy of the July 20, 2026 letter is attached hereto as **<u>Exhibit F</u>**.

23. On July 22, 2026, Lender again notified Borrower and Guarantor that they were in default under the Loan Documents and Lender accelerated the indebtedness owed under the Loan Documents. A true and correct copy of the July 22, 2026 letter is attached hereto as **Exhibit G**.

24. On August 20, 2026, Lender notified Borrower and Guarantor of additional events of default under the Loan Documents. A true and correct copy of the August 20, 2026 letter is attached hereto as **Exhibit H**.

25. Events of Default occurred under the Loan Agreement because, among other things (the "Existing Events of Default"):

a. Guarantor and Borrower failed to maintain aggregate Liquid Assets of at least $1,500,000 as of the most recent financial reporting delivered to Lender;

b. Borrower failed to maintain Lender as its principal depository bank, including for the maintenance of operating, administrative, cash management, collection activity, and other deposit accounts for the conduct of Borrower's business;

c. Borrower created, incurred, assumed, permitted to exist, or otherwise became directly or indirectly liable with respect to any Indebtedness, other than the Obligations and trade indebtedness incurred in the ordinary course of business;

d. Borrower's Q1 2026 and Q2 2026 financial reporting did not include a signed Compliance Certificate, as required by Section 4.15(g) of the Loan Agreement;

e. Borrower failed to provide bank and brokerage statements evidencing the liquidity of Guarantor as of Q2 2026, as required by Section 4.15(a)(ii) of the Loan Agreement;

f. Borrower's Q2 2026 financials reflect that Borrower had only $84,477 in cash on hand as of June 30, 2026, which is a significant reduction from the $536,369

that Borrower had as of December 31, 2025. Accordingly, it appears that the minimum Liquid Assets requirement was not satisfied for Q2 2026, as required by Section 4.15(g) of the Loan Agreement;

g. Borrower's Q2 2026 financials reflects outstanding sales taxes of $424,125, evidencing a failure of Borrower to pay all taxes as and when due, as required by Section 4.3 of the Loan Agreement;

h. Borrower failed to keep the Collateral free and clear of all liens, as evidenced by the UCC Financing Statement filed on January 22, 2026 by Corporation Service Company, in violation of Section 4.2 of the Loan Agreement; and

i. Borrower's Q2 2026 financials reflects accounts payable of $2,311,900 for Q2 2026, thereby indicating that Borrower has failed to pay all Indebtedness, including trade debt, within 60 days of incurrence, in violation of Section 4.11 of the Loan Agreement.

26. To date, Borrower and Guarantor failed to pay the amounts owed under the Loan Documents and failed to cure the foregoing Existing Events of Default.

27. As of September 8, 2026, an amount not less than $8,842,281.45 is owed under the Loan Documents. Interest and attorneys' fees and expenses continue to accrue.

28. In addition to the amounts owed under the Loan Documents, all assets owned by Borrower secure the indebtedness owed to Lender by Borrower's affiliates TIG QUESO LLC, QUESO TIME DE 1 LLC, QUESO TIME DE 2 LLC, QUESO TIME DE 3 LLC, QUESO TIME DE 4 LLC, QUESO TIME DE 5 LLC, QUESO TIME TPA1 LLC, QUESO TIME TPA2 LLC, QUESO TIME TPA3 LLC, QUESO TIME NJ 1 LLC, QUESO TIME NJ 10 LLC, QUESO TIME NJ 11 LLC, QUESO TIME NJ 12 LLC, QUESO TIME NJ 17 LLC, QUESO TIME NJ 2 LLC,

QUESO TIME NJ 20 LLC, QUESO TIME NJ 3 LLC, QUESO TIME NJ 4 LLC, QUESO TIME NJ 5 LLC, QUESO TIME NJ 6 LLC, QUESO TIME NJ 9 LLC, QUESO TIME NJ 15 LLC, QUESO TIME NJ 18 LLC, QUESO TIME NJ 19 LLC, QUESO TIME NJ 21 LLC, QUESO TIME NJ 22 LLC, QUESO TIME NY 1 LLC, QUESO TIME NY 2 LLC, QUESO TIME NY 3 LLC, QUESO TIME NY 4 LLC, QUESO TIME PA 1 LLC, QUESO TIME PA 10 LLC, QUESO TIME PA 11 LLC, QUESO TIME PA 2 LLC, QUESO TIME PA 3 LLC, QUESO TIME PA 6 LLC, QUESO TIME PA 7 LLC, QUESO TIME PA 8 LLC, QUESO TIME PA 9 LLC, QUESO TIME PA 12 LLC, TIG QUESO NY LLC, TIG QUESO DE LLC, TIG QUESO NJ LLC, TIG QUESO PA LLC, TIG QUESO FL LLC (collectively, "Queso Borrower").

29. The Security Agreement states as follows:

> 3. Secured Obligations. This security interest is given to secure the payment and performance of the Obligations, including all Indebtedness under the Note **and all Obligations with respect to the Related Agreements**, as such Related Agreements may be amended, restated, supplemented, extended or renewed from time to time. To the extent that any Obligation secured hereby is held by an Affiliate of Lender, rather than directly by Lender, Debtor acknowledges and agrees that Lender is acting both for itself, with respect to the Obligations held by Lender, and as agent for and on behalf of such Affiliate with respect to Obligations held by such Affiliate and that Lender shall be entitled, both on its own behalf and as agent for and on behalf of such Affiliate, to exercise all rights and remedies of the secured party under this Agreement.

(Security Agreement, § 3 (emphasis added.)

30. The Security Agreement contains the following relevant defined terms:

> "***Affiliate***" means, with respect to a Person, each officer, director, manager, general partner, or joint-venturer of such Person and any other Person that directly or indirectly Controls, is Controlled by, or is under common Control with, such Person.
>
> "***Control***" and "***Controlled***" means possession of either (a) the power to vote, or the beneficial ownership of, 10% or more of any class of voting securities (or other ownership interests) of such Person; or (b) the power to direct or cause the direction of the

> management and policies of such Person, whether by contract or otherwise.
>
> "***Credit Party***" means Borrower, each Guarantor and each other Person (other than Lender) that is or may become a party to this Agreement or any other Loan Document.
>
> "***Obligations***" means all amounts, obligations, liabilities, covenants and duties of every type and description (including for the payment of money), owing by any Credit Party to any Lender Party, or any Secured Swap Provider (other than Excluded Rate Contract Obligations), arising out of, under, or in connection with any Loan Document or any Related Agreement, whether direct or indirect, absolute or contingent, due or to become due, liquidated or not, now existing or hereafter arising, however acquired, and whether or not evidenced by any instrument; ***provided, however***, that Obligations of any Borrower or Guarantor shall not include any Excluded Rate Contract Obligations solely of such Borrower or Guarantor.
>
> "***Person***" means any individual, partnership, corporation, business trust, public benefit corporation, joint stock company, estate, association, firm, enterprise, trust, limited liability company, unincorporated association, joint venue and any other entity or Government Authority.
>
> "***Related Agreement***" means each agreement, document, and instrument, other than the Loan Documents, now or hereafter existing between, or by, any Credit Party or Affiliate of a Credit Party (including as a successor in interest) and, or for the benefit of, Lender or any Lender Affiliate (including, in each case, as a successor in interest) or any Secured Swap Provider, including Secured Rate Contracts, as any such agreement, document, or instrument may be amended, restated, supplemented, extended or renewed from time to time.

(Loan Agreement, Ex. 8.1.)

31. Each of the entities comprising Borrower and Guarantor are Credit Parties, as defined in the Security Agreement.

32. Queso Borrower is an affiliate of Borrower because both sets of entities are owned by Jiger Patel and Manisha Patel and managed by Jiger Patel and Manisha Patel.

33. The loan documents executed by Queso Borrower in favor of Lender representing two loans in the collective original principal amount of $20,000,000 (together with all documents executed contemporaneously therewith and/or related thereto, as amended and/or modified, the "Queso Loan Documents") are Related Agreements, as defined in the Security Agreement, because they are agreements and instruments executed by an Affiliate of Borrower in favor of Lender.

34. Because the Queso Loan Documents are Related Agreements, they are part of the definition of Obligations that are secured by the first-priority security interest granted in the Loan Documents.

35. Queso Borrower is in default under the Queso Loan Documents. As of July 2026, an amount not less than $18,318,768.44 is due under the Queso Loan Documents.

36. Additionally, a receiver has been appointed to take possession of, operate and sell Queso Borrower's business. (*See* Case No. 5:26-cv-05612-KNS, Doc. No. 19.)

37. Upon information and belief, Borrower is actively pursuing a sale of its assets.

38. In the August 20, 2026 letter, Lender notified Borrower that, pursuant to the Security Agreement, Lender's lien on Borrower's assets secures the indebtedness owed by Borrower and Queso Borrower.

39. Borrower disputes that its assets secure the indebtedness owed by Queso Borrower. *See* August 25, 2026 letter from Borrower's counsel to Lender's counsel, a true and correct copy of which is attached hereto as **<u>Exhibit I</u>**.

40. Upon information and belief, Borrower proposes to pay purported "investors" ahead of amounts owed to Lender. Regardless of whether such purported "investors" are equity holders or unsecured lenders, their interests are subordinate to Lender's first-priority security

interest and are not entitled to payment from proceeds of Lender's collateral ahead of Lender. To the extent Borrower incurred new Indebtedness other than the Obligations and trade debt in the ordinary course of business, such Indebtedness constitutes an additional event of default Section 5.12 of the Loan Agreement.

41. On September 3, 2026, Lender reiterated its position that Borrower's assets secure the amounts owed by Queso Borrower. A true and correct copy of the September 3, 2026 letter is attached hereto as **Exhibit J**.

42. Plaintiff fully complied with its obligations under the Loan Documents and all conditions precedent to Borrower's obligation to repay the sums due under the Notes and other Loan Documents have been fulfilled or waived.

**Basis to Appoint a Receiver Over Borrower**

43. Compelling grounds exist for the immediate appointment of a receiver over Borrower.

44. The Existing Events of Default are ongoing and have not been cured.

45. In the Security Agreement, Borrower agreed to the appointment of a receiver in precisely this scenario. Specifically, Borrower agreed as follows:

> If an Event of Default shall have occurred and be continuing and in additional to any other rights and remedies, as matter of right and without notice to Debtor or anyone claiming under Debtor, and without regard to the then value of the UCC Collateral or the interest of Debtor therein, or the solvency of Debtor or the occurrence of any Event of Default described in Section 6.1(f) of the [Reaper] Loan Agreement, lender may seek the appointment of a receiver for Debtor and/or any of the other Credit Parties and/or the UCC Collateral and, to the maximum extent permitted by law, for all other assets of Debtor and such other Credit Parties. Debtor and each other Credit Party waives any right to a hearing or notice of hearing prior to the appointment of a receiver and irrevocably consents to such appointment. Such receiver shall have all of the usual powers and duties of receivers in like or similar cases and all of the powers and

> duties of Lender in case of entry as provided above and shall continue as such and exercise all such powers until the later of the date of confirmation of sale of the UCC Collateral or the date of expiration of any redemption period, unless such receivership is sooner terminated. All expenses incurred by the receiver or its agents, including obligations to repay funds borrowed by the receiver, shall constitute a part of the Obligations. Any revenues collected by the receiver shall be applied first to the expenses of the receivership, including reasonable attorneys' fees incurred by the receiver and Lender, together with interest thereon at the Default Rate from the date incurred until paid, and the balance shall be applied toward the Obligations or in such other manner as the court may direct.

(Security Agreement, § 8.)

46. Like Queso Borrower, Borrower is managed by Jiger Patel and Guarantor.

47. Following numerous failures by Mr. Patel as manager of Queso Borrower, a receiver was appointed to take possession of, operate and sell Queso Borrower's businesses. Those failures include, but are not limited to the following:

a. Failure to provide timely or accurate reporting regarding Queso Borrower's operations;

b. Failure to inform Lender for over a year that Queso Borrower was no longer in good standing with Qdoba Franchisor or that Qdoba Franchisor had issued a notice of default and termination to Queso Borrower;

c. Failure to inform Lender that Queso Borrower entered into an agreement with Qdoba Franchisor wherein Queso Borrower acknowledged that it owed Qdoba Franchisor over $1 million and that Queso Borrower had agreed to sell its interests in all Qdoba restaurants;

d. Failure to cause Queso Borrower to pay over $1 million in sales taxes;

e. Failure to pay rent;

f. Failure to provide the chief restructuring officer appointed at Lender's request with complete and adequate access to Queso Borrower's books and records, all the while retaining complete control over Queso Borrower;

g. While the CRO was in place, Queso Borrower, under Mr. Patel's management, diverted over $300,000 from its bank account(s), which funds were transferred to unknown transferees for unknown purposes;

h. Under Mr. Patel's leadership, and without Lender's knowledge, Queso Borrower experienced significant cash flow issues, leading to Mr. Patel's decision to pay payroll via check, notwithstanding insufficient funds in Queso Borrower's bank account(s), with the hope that enough deposits would be made by the time employees deposited the checks; and

i. Mr. Patel, without informing Lender, negotiated two letters of intent with the same purchaser, one for the sale of eighteen (18) Qdoba stores securing the indebtedness owed to Lender, and the other for the sale of one (1) store securing indebtedness owed to another lender. But the purchase price for the single store was five times greater than the purchase price for the 18 stores, showing clear favoritism by Mr. Patel of the other lender.

48. Under Mr. Patel's management, Borrower suffers from the same lack of transparency and has failed and/or refused to provide the financial information that is required to be provided to Lender.

49. Additionally, as evidenced by the Q2 reporting provided to Lender, Borrower's operations have significantly declined over the last six months under Mr. Patel's leadership. As of

June 30, 2026, Borrower had only $84,477 cash on hand, as compared to $536,369 as of December 31, 2026.

50. This amount is insufficient to cover necessary operating expenses, including but not limited to payroll, rent, food vendors and sales taxes. The reporting further indicates that Borrower has significant accrued and unpaid expenses, including accrued wages in the amount of $226,971, accrued sales taxes of $424,105, accrued credit card tips of $32,011.

51. Upon information and belief, revenues of Borrower's operations have been used for payment of debt owed by one or more entities affiliated with and/or owned by Guarantor and/or Mr. Patel, which suggests that the corporate form is not being observed.

52. Further, upon information and belief and without Plaintiff's prior written consent, Borrower has incurred indebtedness other than trade debt in the ordinary course of business, agreeing to additional "investments" presumably documented as debt.

53. Given the foregoing, the appointment of a receiver over Borrower, its businesses and all of its assets, wherever located, is necessary to preserve and protect Plaintiff's collateral and to sell the collateral in an orderly and professional manner that maximizes the value of the collateral.

**COUNT I**
**SUIT ON NOTES**

54. The allegations contained in paragraphs 1 through 53 are incorporated by reference as if fully set forth herein.

55. As a result of the Existing Events of Default, Borrower is in default under the Notes and Loan Documents.

56. Despite proper demand being made on Borrower for payment of the amounts owed under the Notes and Loan Documents, Borrower has failed and/or refused to make the payments required thereunder or otherwise cure the Defaults.

57. As of September 8, 2026, an amount not less than $8,842,281.45 is owed under the Loan Documents. Interest and attorneys' fees and expenses continue to accrue.

58. Plaintiff is also entitled to the recovery of attorneys' fees and expenses incurred in connection with collection of the amounts owed under the Loan Documents.

**COUNT II**
**APPOINTMENT OF RECEIVER**

59. The allegations contained in paragraphs 1 through 53 are incorporated by reference as if fully set forth herein.

60. This Court has the legal and equitable power to appoint a receiver.

61. Pursuant to Federal Rule of Civil Procedure 66, this Court is authorized to appoint a receiver over Borrower and its assets.

62. The appointment of a receiver to take control of and manage Borrower its businesses and assets is proper under the circumstances.

63. As a result of Borrower's defaults under the Loan Documents, Lender is entitled to the appointment of a receiver both under the express terms of the Loan Documents and because equitable considerations weigh heavily in favor of such an appointment.

64. The Existing Events of Default are ongoing and have not been cured.

65. Pursuant to Section 8 of the Security Agreement, Borrower agreed to and recognized Lender's right to the appointment of a receiver upon the occurrence of an Event of Default, with or without notice to Borrower.

66. Because Borrower consented to the appointment of a receiver following and Event of Default and because the Existing Events of Default have occurred and remain ongoing, Lender respectfully requests that the Court appoint a receiver over Borrower.

67. In addition to Lender's contractual right to the appointment of a receiver, the appointment of a receiver is appropriate under the Court's equitable powers given Borrower's failure to cure the Existing Events of Default and failure to timely provide Lender with accurate financial information as required by the Loan Documents.

68. Furthermore, Borrower's most recent financial reporting indicates that Borrower's financial position has significantly declined over the last 6 months as it has dangerously low cash on hand and increasing accrued expenses.

69. Upon information and belief, revenues of Borrower's operations are being and/or have been used to fund expenses owed by other entities affiliates with and/or owned by Guarantor and/or Mr. Patel, which suggests that the corporate form is not being observed.

70. Borrower is pursuing a sale of its assets and has threatened to run the assets into the ground if Lender demands compliance with the Loan Agreement and Security Agreement and

requires that Borrower pay the proceeds of the sale of Borrower's assets to satisfy the amounts owed by Borrower and Queso Borrower.

71. Borrower has failed to provide to the Lender financial reporting required under the Loan Documents and, thus, has failed to provide the transparency required under the Loan Documents.

72. In addition, upon information and belief, Jiger Patel, as manager of Queso Borrower, diverted over $300,000 from Queso Borrower to unknown transferees for unknown purposes. Given the lack of transparency and failure to comply with the reporting required under the Loan Documents, and given Borrower's diminishing cash position, a receiver is needed to oversee and manage Borrower's cash, which is Lender's collateral, and to ensure that Borrower's revenues are used for the operation, management, and preservation of Lender's collateral.

73. Borrower has also failed to pay sales taxes as and when due, with $424,105 in unpaid sales taxes owed as of June 30, 2026.

74. As described in Lender's accompanying motion, a receivership is necessary and desirable to preserve Borrower's assets and protect against loss and also to conduct an orderly sale of Borrower's assets.

**COUNT III**
**DECLARATORY JUDGMENT**

75. The allegations contained in paragraphs 1 through 53 are incorporated by reference as if fully set forth herein.

76. Pursuant to the Security Agreement, Lender's first-priority lien on Borrower's assets secures the indebtedness owed by Borrower and the indebtedness owed by Queso Borrower.

77. The indebtedness owed by Queso Borrower is an Obligation under the Security Agreement because it is an agreement by an Affiliate of Borrower in favor of Lender.

78. Borrower disputes that its assets secure the indebtedness owed by Borrower and Queso Borrower.

79. Upon information and belief, Borrower is actively pursuing the sale of its assets and intends to use the proceeds of the sale to pay amounts other than the indebtedness owed by Queso Borrower.

80. An actual and substantial controversy therefore exists between Lender and Borrower concerning the scope of Lender's security interest. Pursuant to 28 U.S.C. §§ 2201 and 2202, Lender seeks a declaratory judgment that (a) Lender's first-priority security interest in Borrower's assets secures the indebtedness owed by both Borrower and Queso Borrower; (b) Lender's security interest continues in and attaches to identifiable proceeds of any sale or other disposition of Borrower's assets except to the extent Lender expressly authorizes a disposition free of its security interest; and (c) such proceeds are subject to Lender's first-priority security interest and must be applied to the secured indebtedness owed to Lender by Borrower and Queso Borrower before payment to Borrower's purported investors or other junior interests.

## **RESERVATION OF RIGHTS**

81. The rights and remedies available to Lender under the Loan Documents, the Uniform Commercial Code and other applicable law are cumulative. Nothing in this Complaint is intended to constitute, or shall be construed as, an election of remedies or a waiver, release, limitation or impairment of any right, claim, lien, security interest or remedy available to Lender, including any rights or remedies against Guarantor or any other obligor.

82. Although Lender does not presently seek injunctive relief, Lender expressly reserves the right, subject to the Federal Rules of Civil Procedure and applicable law, to seek temporary, preliminary or permanent injunctive relief, or other provisional, equitable or

enforcement relief if circumstances warrant, whether by motion, amendment or supplement to this Complaint, or otherwise as permitted by law. Lender likewise reserves the right, subject to Federal Rule of Civil Procedure 15 and other applicable law, to amend or supplement this Complaint based on facts learned or events occurring after filing.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

(a) Against Defendants, jointly and severally, for all amounts owed under the Loan Documents, together with all interest accruing thereon through the date and entry of judgment;

(b) For entry of an order appointing a receiver to take possession and control over Defendants and their business and assets and to manage, operate and sell the assets, pending the completion of this case or further order of this Court;

(c) For a declaratory judgment that (i) Lender's first-priority security interest in Defendants' assets secures the indebtedness owed by both Borrower and Queso Borrower, (ii) Lender's security interest continues in and attaches to identifiable proceeds of any sale or other disposition of Borrower's assets except to the extent Lender expressly authorizes a disposition free of its security interest, and (iii) such proceeds are subject to Lender's first-priority security interest and must be applied to the secured indebtedness owed to Lender by Borrower and Queso Borrower before payment to Borrower's purported investors or other junior interests;

(d) For Plaintiff's attorneys' fees and expenses of litigation;

(e) For post-judgment interest as provided by law;

(f) For all costs of court;

(g) Without limiting the foregoing, and consistent with the foregoing reservation of rights, for such additional provisional or equitable relief, including injunctive relief, as Plaintiff may later seek by appropriate motion or amended or supplemental pleading and as the Court deems warranted; and

(h) For such other and further relief as this Court deems just and proper.

Dated: September 8, 2026

Respectfully submitted,

/s/ *James E. Van Horn*_____
James E. Van Horn
Pennsylvania Bar No. 88715
**Barnes & Thornburg LLP**
555 12th St NW, Suite 1200
Washington, DC 20004
Telephone: (202) 371-6531
JVanHorn@btlaw.com

Lisa Wolgast (pro hac forthcoming)
**Barnes & Thornburg LLP**
3340 Peachtree Road, N.E., Suite 2900
Atlanta, Georgia 30326-1092
Telephone: (470) 832-7535
Lisa.Wolgast@btlaw.com

*Attorneys for Bank Midwest, a division of NBH Bank*