# **Exhibit D**

# SECURITY AGREEMENT

THIS **SECURITY AGREEMENT** (as it may be amended, restated, supplemented, extended or renewed from time to time, the "***Agreement***") is made as of August 15, 2024, by **TIG REAPER LLC**, a Delaware limited liability company ("***Debtor***"), for the benefit of **BANK MIDWEST**, a division of NBH Bank ("***Lender***"), as the secured party.

## RECITALS:

A. Lender has agreed to lend Debtor the sum of $6,650,000.00_ in the aggregate (the "***Loan***") in accordance with the terms of the Loan Agreement, dated the same date as this Agreement, between Lender and Debtor (as the same may be amended, restated, supplemented, extended or renewed from time to time, the "***Loan Agreement***"). Capitalized terms used in this Agreement and not defined in this Agreement have the meanings given to such terms in the Loan Agreement.

B. It is a condition precedent to Lender making the Loan that Debtor execute and deliver this Agreement to Lender granting Lender a first priority lien on the UCC Collateral.

## AGREEMENT:

For valuable consideration, Debtor represents and warrants to Lender and covenants and agrees for the benefit of Lender as follows:

1. <u>Grant of Security Interest; the UCC Collateral</u>. Debtor grants to Lender a security interest in all of Debtor's personal property, including, without limitation, the following described property, whether now owned or hereafter acquired and wherever located, together with all replacements and substitutions therefor and all cash and non-cash proceeds (including insurance proceeds and any title and UCC insurance proceeds) and products thereof, and, in the case of tangible UCC Collateral, together with all additions, attachments, accessions, parts, equipment and repairs now or hereafter attached or affixed thereto or used in connection therewith, excluding, however, any and all "consumer goods," as defined in the UCC: All of Debtor's right, title, and interest in: (a) all types of property included within the term "equipment" as defined by the UCC (except vehicles, boats and airplanes), including machinery, furniture, appliances, trade fixtures, tools, and office and record keeping equipment; (b) all inventory, including all goods held for sale, raw materials, work in process and materials or supplies used or consumed in Debtor's business; (c) all documents; general intangibles; accounts; contract rights; chattel paper and instruments; money; securities; investment properties; deposit accounts; supporting obligations; letters of credit and letter of credit rights; commercial tort claims; and records, software and information contained in computer media (such as data bases, source and object codes and information therein), together with any equipment and software to create, utilize, maintain or process any such records or data on electronic media; (d) any and all plans and specifications, designs, drawings and other matters prepared for any construction on any real property owned by Debtor or regarding any improvements to any of such real property; and (e) goodwill (collectively, the "***UCC Collateral***"); ***provided, however***, that, except to the extent Franchisor has consented to the collateral assignment of the Franchise Agreements to Lender, the security interest in any franchise, license, or distributorship agreement is subject to the provisions of Section 9-408 of the UCC. The UCC Collateral is a part of the Collateral.

2. <u>Limitation</u>. By accepting this Agreement, Lender confirms and agrees that, notwithstanding the inclusion of general intangibles as part of the UCC Collateral and the creation, attachment and perfection of Lender's security interest in general intangibles in accordance with the provision of Section 9-408(a) of the UCC, except to the extent Franchisor has consented to the collateral assignment of the Franchise Agreements to Lender, such creation, attachment and perfection, as it relates to the Franchise Agreement, is subject to the limitations imposed by Section 9-408(d) of the UCC which provide that such creation, attachment, and perfection (a) is not enforceable against Franchisor; (b) does not impose a duty or obligation on Franchisor; (c) does not require Franchisor to recognize the security interest, pay or render performance to Lender, or accept payment or performance from Lender; (d) does not entitle Lender to use or assign Debtor's rights under the Franchise Agreement; and (e) does not entitle Lender to use, assign, possess, or have access to any trade secrets or confidential information of Franchisor.

3. Secured Obligations. This security interest is given to secure the payment and performance of the Obligations, including all Indebtedness under the Note and all Obligations with respect to the Related Agreements, as such Related Agreements may be amended, restated, supplemented, extended or renewed from time to time. To the extent that any Obligation secured hereby is held by an Affiliate of Lender, rather than directly by Lender, Debtor acknowledges and agrees that Lender is acting both for itself, with respect to the Obligations held by Lender, and as agent for and on behalf of such Affiliate with respect to Obligations held by such Affiliate and that Lender shall be entitled, both on its own behalf and as agent for and on behalf of such Affiliate, to exercise all rights and remedies of the secured party under this Agreement.

4. Use; Ownership. Debtor will (a) keep all of the tangible UCC Collateral at the Site; (b) use the UCC Collateral only in its trade or business; (c) maintain all of the tangible UCC Collateral in good operating order and repair, normal wear and tear excepted; (d) use and maintain the UCC Collateral only in compliance with manufacturers' recommendations and all Applicable Law; (e) keep all of the UCC Collateral free and clear of any and all liens, claims and encumbrances, including purchase money security interests, other than those in favor of Lender or Landlord's liens imposed or implied by law; and (f) remain the sole owner of the UCC Collateral and not sell, lease, mortgage, hypothecate, license, grant a security interest in or otherwise transfer or encumber any of the UCC Collateral (a "***Transfer***") except for (i) sales of inventory in the ordinary course of business and (ii) so long as no Default has occurred and is continuing, sales or other dispositions of obsolescent items of equipment consistent with past practices, so long as such items of obsolete equipment are replaced by items of equal or greater value and utility. Except as provided in the preceding sentence, Debtor will not part with possession of any of the UCC Collateral (except to Lender or for maintenance and repair). In furtherance thereof, Debtor shall not (a) change its name, identity or jurisdiction of organization without, in each case, giving Lender thirty (30) days prior written notice, and (b) authorize the filing of any financing statements, except those naming Lender as the secured party, to be filed with respect to any UCC Collateral.

5. Financing Statements and Further Assurances. This Agreement is, among other things, intended by the parties to be a security agreement for purposes of the UCC. Debtor agrees, on request of Lender, to furnish to Lender such further information, to execute and deliver to Lender such documents and instruments (including UCC financing statements) and to do such other acts and things as Lender may at any time reasonably request relating to the perfection or protection of the security interest in the UCC Collateral created by this Agreement or for the purpose of carrying out the intent of this Agreement. Without limiting the foregoing, Debtor shall cooperate and do all acts deemed necessary or advisable by Lender to continue in Lender a perfected first security interest in the UCC Collateral and shall obtain and furnish to Lender any subordinations, releases, landlord, lessor, bailee or mortgagee waivers, control agreements, and similar documents as may be from time to time requested by, and in form and substance satisfactory to, Lender. Upon Lender's request, Debtor shall use commercially reasonable efforts to obtain from Lessor (and any lender to Lessor), each in a form acceptable to Lender (a) landlord lien waivers and access rights; and (b) subordination, non-disturbance, and attornment agreements. Debtor will warrant and defend the UCC Collateral and Lender against all claims by all persons in connection with the Obligations.

6. Lender's Authority. Debtor authorizes Lender to file financing statements, continuations, and amendments thereto describing the UCC Collateral and containing any other information required by the applicable UCC, in such form and substance as Lender, in its sole discretion, may determine, including a collateral description of "all assets". Debtor irrevocably grants to Lender the power to sign Debtor's name and generally to act on behalf of Debtor to execute and file applications for title, transfers of title, financing statements, notices of lien, demands for terminations or other security interests in any of the UCC Collateral and other documents pertaining to any or all of the UCC Collateral; ***provided, however***, prior to Lender exercising such power of attorney, Lender shall deliver a written notice to Borrower indicating the action Lender intends to take pursuant to such power of attorney and ten (10) days shall have passed without Borrower having provided evidence reasonably acceptable to Lender that the circumstances which were the basis for Lender's notice to Borrower no longer require the exercise by Lender of such power of attorney, except that no such notice from Lender to Borrower shall be required prior to Lender exercising such power of attorney if any material portion of the Collateral or Lender's Lien on any material portion of the Collateral is in immediate jeopardy, as reasonably determined by Lender. This power is coupled with Lender's interest in the UCC Collateral and is irrevocable during such time as any of the Obligations are outstanding. Debtor shall, if any certificate of title be required or permitted by law for any of the UCC Collateral, obtain and promptly deliver to Lender such certificate showing the lien of this Agreement with respect to the UCC Collateral. Debtor ratifies its prior

authorization for Lender to file financing statements and amendments thereto describing the UCC Collateral and containing any other information required by the UCC, if filed prior to the date hereof.

7. Certain Rights and Remedies. If an Event of Default shall have occurred and be continuing, Lender, without any other notice to or demand upon Debtor, shall have in any jurisdiction in which enforcement of this Agreement is sought, in addition to all other rights and remedies, the rights and remedies of a secured party under the UCC and any additional rights and remedies that may be provided to a secured party in any jurisdiction in which any of the UCC Collateral is located, including the right to take possession of the UCC Collateral, and for that purpose Lender may, so far as Debtor can give authority therefor, enter upon the Site and remove the same therefrom. Lender may in its discretion require Debtor to assemble all or any part of the UCC Collateral at such location or locations as Lender may reasonably designate. Unless the UCC Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender shall give to Debtor at least 10 calendar days prior written notice of the time and place of any public sale of UCC Collateral or of the time after which any private sale or any other intended disposition is to be made. Debtor acknowledges that ten (10) calendar days prior written notice of such sale or sales shall be reasonable notice. In addition, Debtor waives any and all rights that it may have to a judicial hearing in advance of the enforcement of any of Lender's rights and remedies hereunder, including, without limitation, its right following an Event of Default to take immediate possession of the UCC Collateral and to exercise its rights and remedies with respect thereto.

8. Receivers. If an Event of Default shall have occurred and be continuing and in addition to any other rights and remedies, as a matter of right and without notice to Debtor or anyone claiming under Debtor, and without regard to the then value of the UCC Collateral or the interest of Debtor therein, or the solvency of Debtor or the occurrence of any Event of Default described in ***Section 6.1(f)*** of the Loan Agreement, Lender may seek the appointment of a receiver for Debtor and/or any of the other Credit Parties and/or the UCC Collateral and, to the maximum extent permitted by law, for all other assets of Debtor and such other Credit Parties. Debtor and each other Credit Party waives any right to a hearing or notice of hearing prior to the appointment of a receiver and irrevocably consents to such appointment. Such receiver shall have all of the usual powers and duties of receivers in like or similar cases and all of the powers and duties of Lender in case of entry as provided above and shall continue as such and exercise all such powers until the later of the date of confirmation of sale of the UCC Collateral or the date of expiration of any redemption period, unless such receivership is sooner terminated. All expenses incurred by the receiver or its agents, including obligations to repay funds borrowed by the receiver, shall constitute a part of the Obligations. Any revenues collected by the receiver shall be applied first to the expenses of the receivership, including reasonable attorneys' fees incurred by the receiver and Lender, together with interest thereon at the Default Rate from the date incurred until paid, and the balance shall be applied toward the Obligations or in such other manner as the court may direct.

9. Marshaling. Lender shall not be required to marshal any present or future collateral security (including but not limited to the UCC Collateral) for, or other assurances of payment of, the Obligations or any of them or to resort to such collateral security or other assurances of payment in any particular order, and all of its rights and remedies hereunder and in respect of such collateral security and other assurances of payment shall be cumulative and in addition to all other rights and remedies, however existing or arising. To the extent that it lawfully may, Debtor agrees that it will not invoke any law relating to the marshaling of collateral which might cause delay in or impede the enforcement of Lender's rights and remedies under this Agreement or under of the other Loan Documents, and, to the extent that it lawfully may, Debtor irrevocably waives the benefits of all such laws.

10. Proceeds of Dispositions; Expenses. Debtor shall pay to Lender on demand any and all expenses, including reasonable attorneys' fees and disbursements, incurred or paid by Lender in protecting, preserving or enforcing Lender's rights and remedies under or in respect of any of the Obligations or any of the UCC Collateral. After deducting all of the foregoing expenses, the residue of any proceeds of collection or sale or other disposition of the UCC Collateral shall, to the extent actually received in cash or converted to cash by sale, lease or other disposition, be applied to the payment of the Obligations in such order or preference as Lender may determine. Upon the final payment and satisfaction in full of all of the Obligations and after making any payments required by Sections 9-608(a)(1)(C) or 9-615(a)(3) of the UCC, any excess shall be returned to Debtor. In the absence of final payment and satisfaction in full of all of the Obligations, Debtor shall remain liable for any deficiency.

11. Relation to Other Security Documents. The provisions of this Agreement supplement the provisions of any real estate mortgage or deed of trust granted by Debtor to Lender which secures the payment or performance of any of the Obligations. Nothing contained in any such real estate mortgage or deed of trust shall derogate from any of the rights or remedies of Lender hereunder.

12. Applicability of General Provisions. All of the provisions of the Article in the Loan Agreement entitled "General Provisions" apply to this Agreement, the same as if the provisions of such Article were set forth in full in this Agreement.

13. Choice of Law. **EXCEPT AS MAY BE PROVIDED OTHERWISE IN THE LOAN AGREEMENT, THE LAWS OF THE STATE OF COLORADO (WITHOUT GIVING EFFECT TO THE CONFLICTS OF LAWS PRINCIPLES THEREOF) SHALL GOVERN ALL MATTERS ARISING OUT OF, IN CONNECTION WITH OR RELATING TO THIS AGREEMENT, INCLUDING ITS VALIDITY, INTERPRETATION, CONSTRUCTION, PERFORMANCE AND ENFORCEMENT.**

14. Binding Effect. This Agreement shall be binding upon and inure to the benefit of Debtor and Lender and their respective successors and permitted assigns, including, any United States trustee, any debtor in possession or any trustee appointed from a private panel.

[REMAINDER OF THE PAGE INTENTIONALLY BLANK]

**EXECUTED** effective as of the date first set forth above.

**DEBTOR:**

**TIG REAPER LLC**, a Delaware limited liability company

By: ______________________________
Manisha Patel, Member

By: ______________________________
Jiger Patel, Member