**Exhibit E**

# LOAN ASSUMPTION AND FIRST MODIFICATION AGREEMENT

This **LOAN ASSUMPTION AND FIRST MODIFICATION AGREEMENT** (the "***Modification***") is entered into as of November 14, 2025, by and between **BANK MIDWEST**, a division of NBH Bank ("***Lender***"), and **TIG REAPER LLC**, a Delaware limited liability company ("***Existing Borrower***"), **MANISHA PATEL**, an individual ("***Guarantor***"), and **REAPER TIME NJ 1 LLC**, a New Jersey limited liability company ("***RT NJ 1***"), **REAPER TIME PA 1 LLC**, a Pennsylvania limited liability company ("***RT PA 1***"), and **REAPER TIME PA 2 LLC**, a Pennsylvania limited liability company ("***RT PA 2***", and together with RT NJ 1 and RT PA 1, collectively, "***Additional Borrower***", with references in this Modification to "Additional Borrower" meaning each Additional Borrower).

## RECITALS

A. In connection with the existing loan(s) described on the Loan Schedule (each, an "***Existing Loan***"), Existing Borrower and Lender have entered into the Loan Agreement dated August 15, 2024 (the "***Loan Agreement***"). Pursuant to each Guaranty dated August 15, 2024 (the "***Guaranty***"), Guarantor guaranteed payment and performance of the Existing Loan(s) and other Obligations.

B. Additional Borrower and Existing Borrower have requested that Lender modify the Loan Documents as provided in this Modification and Lender is willing to do so, subject to the terms and conditions set forth herein. "***Borrower***", under this Modification, shall mean, collectively, Existing Borrower and Additional Borrower.

C. This Modification is one of the Loan Documents, and references in the existing Loan Documents and this Modification to "***Loan Documents***," or any of them, shall be deemed to be a reference to such Loan Documents, as modified by this Modification.

**FOR VALUABLE CONSIDERATION**, the parties agree as follows:

## ARTICLE 1
## PRELIMINARY MATTERS

1.1 Defined Terms. Capitalized terms used in this Modification and not defined in this Modification have the meanings given to such terms in the Loan Agreement. The rules of construction and interpretation set forth in the Loan Agreement are applicable to this Modification and the other Loan Documents.

1.2 Recitals and Loan Schedule. The parties acknowledge the accuracy of the Recitals and agree that the Recitals are part of this Modification. Borrower confirms and agrees that the information regarding the Existing Loan(s) set forth on the "***Loan Schedule***" attached as ***Exhibit 1.2*** is complete and correct.

## ARTICLE 2
## JOINDER OF ADDITIONAL BORROWER

2.1 Joinder of Additional Borrower. By its execution of this Modification, Additional Borrower fully, unconditionally and irrevocably agrees to, jointly and severally with Existing Borrower: (i) assume all of the obligations, liabilities, covenants, representations and warranties of Borrower under the Loan Documents, as amended, restated, or modified pursuant to this Modification and the other Loan Documents; (ii) assume and pay the principal balance of the Loans, as such amount may change from time to time, the interest due thereon, and any and all other monies or indebtedness outstanding under the Loans in accordance with all of the terms, provisions, covenants and conditions of the Loan Documents, as amended, restated, or modified pursuant to this Modification and the other Loan Documents; and (iii) assume, be bound by and liable for, comply with and perform all of the duties, obligations, provisions and covenants of the "Borrower" or "Debtor", as applicable, under the Loan Documents, as amended, restated, or modified pursuant to this Modification and the other Loan Documents. Additional Borrower understands

the terms, provisions, covenants, conditions, contents and effect of the Loan Agreement, this Modification and each of the other Loan Documents.

2.2 Collateral of Additional Borrower. Additional Borrower (A) acknowledges and agrees that Additional Borrower holds title to all Collateral of Additional Borrower, together with all rights and interests appurtenant thereto, subject to the provisions of the Loan Documents and to the charge and lien of each assignment, lien, encumbrance and security interest included in the Loan Documents and otherwise subject to the terms and conditions of the Loan Documents and (B) grants, mortgages, conveys and otherwise assigns and transfers to Lender a lien, encumbrance and security interest in and to all of the Collateral owned by Additional Borrower and all after acquired property and other rights and interests that may hereafter be included in the definition of "Collateral" (or similar terms describing security) pursuant to the Loan Documents.

2.3 References. Existing Borrower and Additional Borrower acknowledge and agree that upon the effectiveness of this Modification, Existing Borrower and Additional Borrower shall jointly and severally be the "Borrower", "Assignor", "Grantor", and "Debtor", as applicable, under each of the Loan Documents and agree to be bound by all of the terms, conditions and covenants set forth in the Loan Documents applicable to "Borrower", "Assignor", "Grantor" and "Debtor" in all respects and with the same effect as if Additional Borrower and Existing Borrower had executed and delivered each of the Loan Documents, including, without limitation: (i) Existing Borrower and Additional Borrower shall be jointly and severally liable as "Borrower" under the Loan Agreement and the Notes evidencing the Loan; and (ii) Existing Borrower and Additional Borrower shall be jointly and severally liable as "Debtor" under the Security Agreement dated August 15, 2024.

**ARTICLE 3**
**MODIFICATIONS TO LOAN DOCUMENTS**

Any other provision of the Loan Documents to the contrary notwithstanding and, unless otherwise specifically stated, until such time as all Obligations under the Loan Documents have been fully paid and performed, Borrower covenants and agrees as follows:

3.1 DLOC Increase.

(a) The Maximum Loan Amount for the DLOC is increased by $3,350,000.00 (the "***DLOC Increase***"), from $5,000,000.00 to a total of $8,350,000.00. With respect to the DLOC, references to the Maximum Loan Amount and the DLOC Commitment Amount shall mean and refer to $8,350,000.00. The face amount of the DLOC Note is amended to be $8,350,000.00. Upon the effectiveness of this Modification (and funding of any Advances concurrently herewith), $4,999,485.14 of the DLOC Commitment Amount has been funded and $3,350,514.86 remains available for disbursement.

(b) The DLOC Increase reflects the Borrower's Request for accordion funds as described in ***Section 1.3(i)*** of the Loan Agreement and Lender's agreement to provide such funds. The DLOC Increase equals the maximum amount that may be subject of a Request, and therefore, Borrower has no further rights under said ***Section 1.3(i)***.

(c) Notwithstanding anything to the contrary in the Loan Agreement, including ***Section 1.3(b)*** of the Loan Agreement, from and after the date of this Modification, the DLOC may will only be made available, and Borrower agrees to use the proceeds of the DLOC, exclusively to finance, from time to time: (i) Development Projects at the Development Sites known as Site Nos. 1483 (36470 Seaside Outlet Drive, Suite 1920, Rehoboth Beach, DE), 1445 (500 W Baltimore Pike, Clifton Heights, PA), 1408 (323 Route 202, Flemington, NJ), 1425 (360 N. Oxford Valley Road, Langhorne, PA), and (ii) usual and customary closing costs and expenses as approved by Lender.

3.2 Consent to Transfers. In connection with various development activities, Existing Borrower has entered into leases for new Sites, but desires to have an Additional Borrower operate those Sites. Borrower has requested Lender's consent to transfer those new Sites to the respective Additional Borrower and cause Additional Borrower to join in this Agreement and the other Loan Documents. To the extent required under the Loan Documents,

and subject to the satisfaction of standard conditions related thereto, Lender conditionally approves of Existing Borrower's transfer of its rights with respect to the New Sites to RT PA 1, RT PA 2 and RT NJ 1, as applicable.

3.3 Revisions to Collateral Table. Since the initial Closing of the Loans, Borrower has been in the process of developing various additional Sites, including those referenced in ***Section 3.1*** above. While all new Sites constitute Sites immediately upon Borrower obtaining rights and assets therein, in order to memorialize those new Sites within the Loan Documents, the Collateral Table attached as ***Exhibit 1.1*** to the Loan Agreement is hereby amended and restated in its entirety with the Collateral Table attached hereto as ***Exhibit 1.1***. References in the Loan Agreement and other Loan Documents to the Collateral Table shall be deemed a reference to the Collateral Table attached hereto.

3.4 Revisions to DLOC Draw Request. The "***DLOC Draw Request***" form attached to the Loan Agreement as ***Exhibit 1.3(c)*** is amended and restated in its entirety with the form attached as ***Exhibit 1.3(c)*** to this Modification.

3.5 Revisions to Compliance Certificate. The form of Compliance Certificate attached to the Loan Agreement as ***Exhibit 4.15(g)*** is amended and restated in its entirety with the form attached as of ***Exhibit 4.15(g)*** to this Modification.

3.6 Intentionally Omitted.

3.7 Co-Borrower Provisions. The following shall be added to the Loan Agreement as a new ***Section 8.25***:

8.25 Co-Borrower Provisions.

(a) Joint and Several Liability. References in this Agreement and the other Loan Documents to "Borrower" are to each Borrower signing this Agreement. Each Borrower's liability with respect to the Obligations is joint and several, notwithstanding the provisions of ***subsection (c)*** below, including any allocation of losses and liabilities pursuant to such subsection or otherwise. Each Borrower is a direct, primary and independent obligor, and no Borrower shall be deemed to be a guarantor, accommodation party or otherwise secondarily liable for the Obligations. Each Borrower represents and warrants to and covenants with Lender that (i) Borrowers are engaged in operations that require financing on a joint basis and, accordingly, each Borrower will materially benefit, directly or indirectly, from the Loan; (ii) the Loan has been offered to Borrowers on a joint basis and would not be available to Borrowers on an individual basis on the terms and conditions stated in this Agreement; and (iii) the benefits received by each Borrower are reasonably equivalent to the obligations undertaken by each Borrower.

(b) Representative. Each Borrower hereby appoints TIG REAPER LLC, a Delaware limited liability company ("***Borrower Representative***") as its representative and agent, and Borrower Representative accepts such appointment, for the purposes of (i) making the Closing Draw Request, Draw Requests and otherwise taking actions with respect to Draws, including giving Lender disbursement instructions, wire and deposit instructions, and telephonic confirmations; (ii) delivering certificates, including compliance certificates; (iii) selecting interest rate options, if applicable; (iv) giving and receiving all Notices and consents hereunder or under any of the other Loan Documents; (v) requesting and providing information with respect to accounts payable matters; financial reporting matters, property tax matters (if applicable); insurance matters, and all other account servicing matters; and (vi) taking all other actions (including in respect of compliance with covenants) on behalf of Borrower under the Loan Documents or otherwise with respect to each Loan. Lender may regard any notice or other communication pursuant to any Loan Document from Borrower Representative as a notice or communication from all Borrowers. Each warranty, covenant, agreement and undertaking made on behalf of a Borrower by the Borrower Representative shall be deemed for all purposes to have

been made by such Borrower and shall be binding upon and enforceable against such Borrower to the same extent as if the same had been made directly by such Borrower.

(c) Obligations and Allocations among Borrowers. If any Borrower (the "***Overpaying Borrower***") pays (whether directly or by application of Collateral), or is otherwise held liable for, obligations in excess of the Pro Rata Share of the Overpaying Borrower, the other Borrowers will pay the amount of such excess to the Overpaying Borrower and will indemnify the Overpaying Borrower for, from and against any claims, damages, loss or liability arising from or related to such overpayment. Borrowers agree to maintain books and records accurately reflecting each Borrower's Pro Rata Share. This subsection is only intended to allocate payments, losses, and liabilities among Borrowers in order that (i) as between Borrowers, each Borrower is ultimately liable for its Pro Rata Share; and (ii) the value to each Borrower of the resulting rights and claims against other Borrowers pursuant to this subsection will assure that no Borrower is rendered "insolvent" by virtue of the Obligations for purposes of any Applicable Law relating to fraudulent conveyances and similar claims. The rights and obligations among Borrowers pursuant to this subsection shall survive the payment and performance of the Obligations. "***Pro Rata Share***" means the amount of Loan proceeds actually advanced to or for the benefit of each Borrower as reflected on the books and records of such Borrower. Each Borrower has expressly assumed the risk that such Borrower's actual liability may exceed such Borrower's Pro Rata Share and that overpayments may not actually be reimbursed or indemnified.

(D) Notices to Borrowers. Borrower agrees that all Notices sent to Borrower pursuant to ***Section 8.10*** of the Loan Agreement may be sent to the notice address for the Borrower Representative as shown on the signature page hereto, or to such other address as the Borrower Representative may provide to Lender in a Notice given after the date of this Modification.

## ARTICLE 4
## REPRESENTATIONS AND WARRANTIES

Each Credit Party acknowledges and agrees that the representations and warranties in this Article are a material consideration to Lender; that Lender is relying on their correctness and completeness in entering into this Modification; and that these representations and warranties are true and accurate as of the date hereof, will be true and accurate as of Closing, as if made at Closing, and will survive the Closing regardless of any investigation or inspection by Lender. Accordingly, Borrower and each other Credit Party represent and warrant to Lender:

4.1 Representations and Warranties Continue. In connection with this Modification and for purposes of making the representations and warranties in this Section, each Credit Party has reviewed each of the representations and warranties of such Credit Party in the Loan Documents. All such representations and warranties (taking this Modification into account), are complete and correct as of the date hereof, will continue to be complete and correct as of the Closing, and will survive the Closing.

4.2 No Defaults; No Material Adverse Effects. No Credit Party is in Default under any of the Loan Documents. There has been no change in the financial condition of any Credit Party from the most recent financial statement received by Lender from or on behalf of such Credit Party that would constitute a Material Adverse Effect.

4.3 Due Authorization, Execution and Delivery; Validity. The execution, delivery, and performance by each Credit Party of this Modification and the other Loan Documents to be executed by such Credit Party in connection herewith (collectively, with this Modification, the "***Modification Documents***") have been duly authorized by each Credit Party, and such Modification Documents have been duly executed and delivered on behalf of each such Credit Party. The individual(s) executing the Modification Documents on behalf of each Credit Party have been duly authorized to do so in accordance with resolutions duly adopted by such Credit Party's board of directors (or similar governing body), members, or partners, as the case may be. All of Borrower's organizational documents, and the certificates of Borrower regarding its organizational documents, authority and authorized officers, managers or members, previously delivered to Lender remain in full force and effect, have not been amended, supplemented or

rescinded and may be relied upon in connection with the Modification Documents. The Modification Documents constitute the legal, valid and binding obligations of each Credit Party executing such Modification Documents, enforceable against such Credit Party in accordance with their terms, except as enforceability may be limited by applicable bankruptcy, insolvency, liquidation, reorganization and other laws affecting the rights of creditors generally, and general principles of equity.

4.4 No Duress. Each Credit Party has executed those Modification Documents to which it is a party as a free and voluntary act, without duress, coercion or undue influence exerted by or on behalf of Lender or any other Person.

4.5 Solvency. Both before and after giving effect to consummation of the transactions contemplated by this Modification, the Credit Parties taken together, and Borrower, individually, are Solvent.

4.6 Commercial Nature of Loans. The purpose of each Loan is a commercial business purpose and not a personal, family, or household purpose. No portion of the Collateral is being or will be used by any Credit Party or any other Person for any personal, family or household purposes.

4.7 Beneficial Ownership Certification. As of the Closing Date, the information included in each Beneficial Ownership Certification is true and correct in all respects.

## ARTICLE 5
## CREDIT PARTY RATIFICATIONS, CONSENTS, AND RELEASES

5.1 Ratifications. The Loan Documents are ratified and affirmed by Borrower and remain in full force and effect. Lender's Liens in the Collateral shall continue in full force and effect and no Collateral is or shall be released from such Liens. Nothing contained in any Modification Document shall constitute a waiver of any rights or remedies of Lender under the Loan Documents. Guarantor consents and agrees to the terms and conditions of the Modification Documents; and agrees that, notwithstanding this Modification and consummation of the transactions contemplated hereby (including the release of any Collateral), the Guaranty and all of Guarantor's covenants, obligations, agreements, waivers, and liabilities set forth in the Guaranty continue in full force and effect in accordance with their terms, modified only if and to the extent that the guaranteed obligations are modified by the Modification Documents.

5.2 Release. Each Credit Party forever releases, waives, and discharges Lender, its Affiliates, their predecessors, successors, and assigns, and each of their respective officers, directors, shareholders, employees, agents, representatives, and consultants (each, a "***Released Party***") from any and all claims, actions, investigations, demands, damages, and expenses, of whatever kind or nature and however characterized, at law, in equity, or otherwise, that any Credit Party has or may have against any Released Party, known or unknown, foreseen or unforeseen, now existing or arising in the future, based in whole or in part on facts (whether or not now known), existing on or before the date hereof, that relate to or arise out of this Modification, any other Loan Document, the transactions contemplated thereby, or any acts or omissions in connection therewith. Each Credit Party agrees not to assert any claim, sue, or otherwise institute any court or other legal proceeding against any Released Party that is covered by the releases set forth herein. **FURTHER, EACH CREDIT PARTY EXPRESSLY WAIVES ANY PROVISION OF APPLICABLE LAW TO THE EFFECT THAT A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WITH THE RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN SUCH PARTY'S FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH, IF KNOWN BY SUCH PARTY, MUST HAVE MATERIALLY AFFECTED SUCH PARTY'S AGREEMENT WITH THE RELEASED PARTIES**.

## ARTICLE 6
## CONDITIONS PRECEDENT; CLOSING

6.1 Closing Conditions Precedent. The obligations of Lender to consummate the transactions contemplated by this Modification are subject to the satisfaction of each of the conditions precedent in this Section and any other conditions precedent to Closing set forth in this Modification (collectively, the "***Closing Conditions***"),

in Lender's sole discretion, unless Lender, in its sole discretion, waives satisfaction of a particular Closing Condition in writing.

(a) Documents. Lender shall have received this Modification and such other documents and instruments as are contemplated hereby, including a Borrower authorization, in each case duly executed and, where appropriate, acknowledged, by the Credit Parties and in form and substance satisfactory to Lender.

(b) No Default; Representations. Both before and after giving effect to the Closing, there shall be no Default under the Loan Documents, and each representation and warranty made by Borrower and each other Credit Party pursuant to the Loan Documents shall be true and correct in all material respects.

(c) Absence of Material Adverse Effects. Lender shall have determined that no Material Adverse Effect has occurred since the original funding of the Loan.

(d) Good Standing; Authority. If requested by Lender, Borrower shall have provided Lender with evidence that Borrower and each other entity Credit Party is in good standing under the laws of their state of formation and in each state in which any Collateral is located and that the Persons executing this Modification and the other documents or instruments contemplated hereby, other than Lender, are duly authorized to do so.

(e) Evidence that Existing Debt Paid. Evidence that all outstanding financing, indebtedness owed to any of Borrower's shareholders, members, partners, or principals and all other indebtedness owed to any third party, excluding indebtedness held by Lender or its affiliates, has been paid in full.

(f) Liens. Lender shall have received such UCC search results and other reports as Lender shall reasonably require granting to Lender a first priority Lien on all Collateral and evidencing the continuing first priority of Lender's Liens in the Collateral as security for the payment and performance of all of the Obligations.

(g) Insurance. Borrower shall have provided Lender with evidence satisfactory to Lender that all insurance required by the Loan Documents is in full force and effect.

(h) Transaction Costs. Borrower shall have paid to Lender all out-of-pocket costs and expenses then incurred by or on behalf of Lender in connection with this Modification, Lender's underwriting and closing due diligence with respect to this Modification, and the negotiation, documentation, and closing of this Modification, including in connection with Lender's evaluation of and determinations with respect to, the Closing Conditions (collectively, "***Transaction Costs***"). Transaction Costs include the following, as applicable: (i) Lender's outside legal counsel fees; (ii) expenses for UCC search reports, litigation and similar searches; (iii) escrow, recording, and filing fees; and (iv) costs and fees of consultants and other professional advisers retained by Lender.

(i) Fees and Expenses. Borrower shall have paid to Lender any outstanding and unpaid fees and costs then due from Borrower pursuant to any of the Loan Documents.

(j) Franchise Agreements. Borrower shall have provided to Lender fully executed, complete copies of the Franchise Agreements for each new Site, which agreements shall be in full force and effect, with expiration dates, including all renewal and extension options, of not less than the Loan maturity date and otherwise in form and substance satisfactory to Lender, and Lender shall have received such executed subordination agreements, collateral assignments, comfort letters, status certificates, and consents with respect to such agreements as Lender may require.

(k) Leases. Borrower shall have provided to Lender fully executed, complete copies of the Leases for each new Site, which Leases shall be in full force and effect, with expiration dates, including all renewal and extension options, of not less than the Loan maturity date and otherwise in form and substance

satisfactory to Lender, and Lender shall have received such executed subordination agreements, collateral assignments, status certificates, and consents with respect to such agreements as Lender may require.

(l) Beneficial Ownership Certificate. At least five days prior to the Closing Date, with respect to any Borrower that qualifies as a "legal entity customer" under the Beneficial Ownership Regulation, Borrower shall have delivered to Lender a Beneficial Ownership Certification in relation to such Borrower.

6.2 Closing. The closing (the "***Closing***") of this Modification and the transactions contemplated hereby will occur within three Business Days following satisfaction (or waiver by Lender) of each of the Closing Conditions. The date on which Closing occurs is the "***Closing Date***." Borrower hereby authorizes Lender to insert the Closing Date on the first page hereof, as the date hereof, and in the various Loan Documents executed in connection herewith, as the date thereof. Closing must occur on or before 11:00 o'clock a.m. local time in Greenwood Village, Colorado, on November 14, 2025 (the "***Closing Deadline***"). If Closing has not occurred by the Closing Deadline, Lender shall have absolutely no obligation whatsoever to consummate this Modification and the transactions contemplated hereby. Lender may extend the Closing Deadline in Lender's sole discretion. Any extension of the Closing Deadline must be in writing to be valid.

## ARTICLE 7
## ADDITIONAL PROVISIONS

Any other provisions of the Loan Documents to the contrary notwithstanding:

7.1 Governing Law. **THE LAWS OF THE STATE IDENTIFIED IN THE LOAN DOCUMENTS, OTHER THAN THIS MODIFICATION, SHALL, SUBJECT TO ANY LIMITATIONS IN SUCH LOAN DOCUMENTS, GOVERN ALL MATTERS ARISING OUT OF, IN CONNECTION WITH OR RELATING TO THIS MODIFICATION, INCLUDING ITS VALIDITY, INTERPRETATION, CONSTRUCTION, PERFORMANCE AND ENFORCEMENT**.

7.2 Time of the Essence. Time is of the essence in this Modification.

7.3 Binding Effect; Conflicts. This Modification shall be binding upon and inure to the benefit of Lender, each Credit Party, and their respective successors, assigns, heirs and personal representatives. If there are conflicts between the terms of this Modification and the terms of any other Loan Document, the provisions hereof shall control.

7.4 Construction. This Modification and the other Loan Documents shall be interpreted and construed in a fair and impartial manner without regard to such factors as which party prepared the document, the relative bargaining powers of the parties or a party's domicile, but shall be construed and interpreted according to the ordinary meaning of the words used so as to fairly accomplish the purposes and intentions of the parties.

7.5 Document Execution. This Modification and the other Loan Documents may be executed in any number of counterparts and by different parties in separate counterparts, each of which, when so executed, shall be deemed an original and all of which, taken together, shall constitute one integrated agreement. Signature pages may be detached from multiple separate counterparts and attached to a single counterpart.

7.6 Course of Dealing; Further Assurances. No course of dealing between any Credit Party or Affiliate of a Credit Party, and Lender shall be effective to amend, modify or discharge any provision of the Loan Documents. Each Credit Party shall execute, acknowledge (as appropriate) and deliver to Lender such additional agreements, documents and instruments as Lender reasonably requires to carry out the intent of this Modification.

7.7 Credit Party Experience and Advisers; No Lender Advice. Each Credit Party represents, warrants, and covenants that (a) such Credit Party (i) **IS EXPERIENCED IN COMPLEX AND SOPHISTICATED BUSINESS MATTERS AND COMMERCIAL FINANCING TRANSACTIONS OF THE TYPE CONTEMPLATED BY THE LOAN DOCUMENTS**; (ii) **HAS HAD SUFFICIENT TIME TO CAREFULLY REVIEW THIS MODIFICATION AND THE LOAN DOCUMENTS BEING EXECUTED IN CONNECTION**

**WITH THE TRANSACTIONS CONTEMPLATED HEREBY AND CONSULT WITH SUCH INVESTMENT, TAX, LEGAL, FINANCIAL AND OTHER ADVISERS AS SUCH CREDIT PARTY HAS DEEMED APPROPRIATE**; and (iii) **HAS DETERMINED THAT THIS MODIFICATION AND SUCH OTHER LOAN DOCUMENTS COMPLETELY AND ACCURATELY REFLECT THE FINAL BUSINESS DEAL OF THE PARTIES**; and (b) **NO LENDER PARTY OR ANY EMPLOYEE, AGENT, REPRESENTATIVE, OR ADVISER OF A LENDER PARTY HAS PROVIDED ANY CREDIT PARTY WITH ANY INVESTMENT, TAX, LEGAL, OR FINANCIAL ADVICE OR ACTED AS AN ADVISOR TO ANY CREDIT PARTY WITH RESPECT TO SUCH MATTERS**.

7.8 Entire Agreement. **THIS MODIFICATION AND THE OTHER LOAN DOCUMENTS COLLECTIVELY CONSTITUTE THE FINAL EXPRESSION AND ENTIRE WRITTEN AGREEMENT OF LENDER AND THE CREDIT PARTIES WITH RESPECT TO THE SUBJECT MATTER HEREOF AND THEREOF; SUPERSEDE ALL PRIOR AND CONTEMPORANEOUS AGREEMENTS, DISCUSSIONS, AND UNDERSTANDINGS RELATING TO THE SUBJECT MATTER HEREOF AND THEREOF, WRITTEN OR ORAL, INCLUDING PRIOR LETTERS OF INTEREST, PROPOSAL LETTERS, COMMITMENT LETTERS, CONFIDENTIALITY AGREEMENTS, OR OTHER AGREEMENTS, INVOLVING ANY CREDIT PARTY OR LENDER OR ANY OF THEIR RESPECTIVE AFFILIATES RELATING TO A FINANCING OF SUBSTANTIALLY SIMILAR FORM, PURPOSE, OR EFFECT; AND MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY ALLEGED ORAL AGREEMENT.**

[SIGNATURE PAGES FOLLOW]

Executed and effective as of the date first set forth above.

**BORROWER:**

**TIG REAPER LLC**, a Delaware limited liability company

By: Manisha Patel
Manisha Patel, Member

By:
Jiger Patel, Member

**REAPER TIME NJ 1 LLC**, a New Jersey limited liability company

By: TIG Reaper LLC, a Delaware limited liability company, Managing Member

By: Manisha Patel
Manisha Patel, Member

By:
Jiger Patel, Member

**REAPER TIME PA 1 LLC**, a Pennsylvania limited liability company

By: TIG Reaper LLC, a Delaware limited liability company, Managing Member

By: Manisha Patel
Manisha Patel, Member

By:
Jiger Patel, Member

**REAPER TIME PA 2 LLC**, a Pennsylvania limited liability company

By: TIG Reaper LLC, a Delaware limited liability company, Managing Member

By:______________________________
Manisha Patel, Member

By:______________________________
Jiger Patel, Member

**ACCEPTANCE OF APPOINTMENT AS BORROWER REPRESENTATIVE:**

The undersigned is executing this Agreement for the purpose of accepting the appointment of the undersigned as Borrower Representative pursuant to ***Section 8.25(b)*** above.

**BORROWER REPRESENTATIVE:**

**TIG REAPER LLC**, a Delaware limited liability company

By:______________________________
Manisha Patel, Member

By:______________________________
Jiger Patel, Member

Principal Place of Business and Address for Notices:

TIG Reaper, LLC
406 Executive Dr
Langhorne, PA 19047

**GUARANTOR:**

Manisha Patel
**MANISHA PATEL**

**LENDER**:

**BANK MIDWEST**, a division of NBH Bank

By: ______________________________

Name: Steven Dalong

Title: Vice President

**EXHIBIT 1.2**
**LOAN SCHEDULE**

| **Existing Loan** | **Principal Loan Balance as of November 10, 2025*** |
|---|---:|
| Term Loan A (Loan No. 1908313869-00001) | $1,457,500.00 |
| DLOC Term Loan (Loan No. 1908313870-00003) | $4,371,454.39 |
| DLOC (Loan No. 1908313870-00001) | $553,938.31 |

*The above does not reflect any amounts advanced concurrent with this Modification.

**EXHIBIT 1.1**
**COLLATERAL TABLE**

At Closing, the Collateral will include a first priority blanket lien on and security interest in all of Borrower's tangible and intangible personal property, wherever located, including all such property located at or used in connection with the Sites identified below. The Collateral will also include first priority Mortgages on those Sites identified below as Mortgage Sites.

| Store ID No./Name | Permitted Concept | Ownership Interest (Fee or Lease) | Owner of referenced interest | Street Address | City | State | Mortgage Site (Yes/No) |
|---|---|---|---|---|---|---|---|
| 1261 | Dave's Hot Chicken | Lease | TIG Reaper LLC | 1731 Chestnut Street | Philadelphia | PA | No |
| 1190 | Dave's Hot Chicken | Lease | TIG Reaper LLC | 9173 Roosevelt Boulevard | Philadelphia | PA | No |
| 1247 | Dave's Hot Chicken | Lease | TIG Reaper LLC | 122 Park Avenue | Willow Grove | PA | No |
| 1341 | Dave's Hot Chicken | Lease | TIG Reaper LLC | 281 N. West End Blvd. | Quakertown | PA | No |
| 1342 | Dave's Hot Chicken | Lease | TIG Reaper LLC | 318 North DuPont Highway | Dover | DE | No |
| 1483 | Dave's Hot Chicken | Lease | TIG Reaper LLC | 36470 Seaside Outlet Drive, Suite 1920 | Rehoboth Beach | DE | No |
| 1444 | Dave's Hot Chicken | Lease | TIG Reaper LLC | 4435 Kirkwood Highway, Suite B | Wilmington | DE | No |
| 1445 | Dave's Hot Chicken | Lease | TIG Reaper LLC (upon assignment, to be Reaper Time PA 1 LLC) | 500 W Baltimore Pike | Clifton Heights | PA | No |
| 1408 | Dave's Hot Chicken | Lease | TIG Reaper LLC (upon assignment, to be Reaper Time NJ 1 LLC) | 323 Route 202 | Flemington | NJ | No |
| 1425 | Dave's Hot Chicken | Lease | TIG Reaper LLC (upon assignment, to be Reaper Time PA 2 LLC) | 360 N. Oxford Valley Road | Langhorne | PA | No |

**EXHIBIT 1.3(c)**
**COMPLIANCE CERTIFICATE FORM**

**BANK MIDWEST**
P.O. Box 26528
Kansas City, MO 64196-6528

Re: Loan Agreement dated August 15, 2024 (as amended, the "***Agreement***"), between **TIG REAPER LLC**, a Delaware limited liability company, and its affiliates named therein (collectively, the "***Borrower***") and **BANK MIDWEST**, a division of NBH Bank ("***Lender***"). Capitalized terms used in this DLOC Draw Request (the "***Draw Request***") and not defined herein have the meanings given thereto in the Agreement.

Request; Disbursement Instructions. Borrower requests a DLOC Draw of $_________________ (the "***Requested Draw***"), to be disbursed by wire transfer to the payee(s) and account(s) designated in the Disbursement Schedule. If disbursement is to an escrow agent, then escrow agent is authorized to further disburse such funds in accordance with a settlement statement prepared by escrow agent and signed by Borrower and approved by Lender.

| **DISBURSEMENT SCHEDULE** | |
|---|---|
| **Payee and Wire Transfer Instructions** | **Amount** |
| Payee Name: ____________________<br>Account Name: ____________________<br>Account Number: ____________________<br>ABA #: ____________________<br>Bank Name: ____________________<br>Street Address: ____________________<br>City, State, and Zip Code: ____________________<br>Additional Comments or Instructions: ____________________ | $_________________ |
| Payee Name: ____________________<br>Account Name: ____________________<br>Account Number: ____________________<br>ABA #: ____________________<br>Bank Name: ____________________<br>Street Address: ____________________<br>City, State, and Zip Code: ____________________<br>Additional Comments or Instructions: ____________________ | $_________________ |

1. Requested Draw Date. _________________, 20__. Borrower acknowledges that it may take up to ***five Business Days*** after all conditions to funding have been fully satisfied or otherwise waived by Lender to fund the Requested Draw and, consequently, the funding may not occur on the Requested Draw Date.

2. Conditions to Draw. Borrower understands and agrees that Lender's obligation to fund the Requested Draw is subject to Lender's satisfaction with or waiver of, in Lender's sole discretion, each of the DLOC Draw Conditions set forth on ***Exhibit 1.3(d)*** to the Agreement.

3. Borrower Representations, Warranties, and Covenants: As a material inducement to Lender to fund the Requested Draw, Borrower represents and warrants to and covenants with Lender that:

(a) Representations and Warranties. Both before and after funding the Requested Draw, the representations and warranties of each Credit Party in the Loan Documents, including ***Article 3*** of the Agreement, are true and correct in all material respects, as though made as of the date of this Draw Request and will be true and correct as of the date the Requested Draw is funded, except to the extent such representations and warranties expressly relate to an earlier date, in which case such representations and warranties were true and correct in all material respects as of such date.

(b) No Defaults. As of the date of this Draw Request, no Default has occurred that is continuing. The funding of the Requested Draw will not result in the occurrence of a Default. Borrower is and will be in compliance with the financial covenants in ***Section 4.16*** of the Agreement, both before and, on a pro forma basis, immediately after the Requested Draw is funded.

(c) Authorization and Execution. The individual executing this Draw Request is duly authorized to do so.

(d) Purpose. The Requested Draw will be used as follows, with respect to the listed Site(s):

| Proposed Use of Draw | Name of Entity Using Draw | Store # | Concept | Street Address | City | ST | ZIP | Leasehold or Fee Site? |
|---|---|---|---|---|---|---|---|---|
| ☐ Acquisition<br>☐ Development | | | | | | | | |
| ☐ Acquisition<br>☐ Development | | | | | | | | |

(e) Incurrence Tests. Taking the Requested Draw into account, the incurrence tests included in ***Section 4*** of the DLOC Draw Conditions on ***Exhibit 1.3(d)*** to the Agreement are satisfied. Attached are the Financial Statements and covenant calculations used to determine that such incurrence tests are satisfied. The Financial Statements are complete and correct and have been prepared in accordance with GAAP from period to period and otherwise in compliance with the requirements in the Agreement.

Dated: ____________, 20__.

**BORROWER REPRESENTATIVE**:

**TIG REAPER LLC**, a Delaware limited liability company

By:_______________________________________________
Manisha Patel, Member

By:_______________________________________________
Jiger Patel, Member

**BORROWER**: Please attach, at the end of this DLOC Draw Request, the Financial Statements and covenant calculations referred in ***Paragraph 4(e)*** above.

**EXHIBIT 4.15(g)**
**COMPLIANCE CERTIFICATE FORM**

**BANK MIDWEST**
P.O. Box 26528
Kansas City, MO 64196-6528

Re: Loan Agreement dated August 15, 2024 (as amended, the "***Agreement***"), between **TIG REAPER LLC**, a Delaware limited liability company, and its affiliates named therein (collectively, the "***Borrower***") and **BANK MIDWEST**, a division of NBH Bank ("***Lender***"). Capitalized terms used in this Compliance Certificate and not defined herein have the meanings given to those terms in the Agreement.

The undersigned certifies the following to Lender, as of the date of this Compliance Certificate:

1. The attached Financial Statements, bank statements, brokerage statements and all other evidence of Liquid Assets are complete and true and have been prepared in accordance with GAAP from period to period and otherwise in compliance with the requirements stated in the Agreement.

2. Borrower is in compliance with all financial covenants contained in the Agreement, including each of the financial covenant requirements set forth below. The covenant calculations used in determining compliance with the following financial covenants are attached to this Compliance Certificate as ***Schedule 1***.

(a) New Store Post-Compensation Consolidated FCCR must be ≥ 1.15:1 for the period ending _______, 20__ for each New Store. The ratio as of the end of such period is as follows for each of the following New Stores:

(1) [Insert Address] ____:1.

(b) Mature Stores Post-Compensation Consolidated FCCR must be ≥ 1.15:1 for the period ending _______, 20__. The ratio as of the end of such period is __________ :1.

(c) Liquid Asset of Guarantor and Borrower must be at least $1,500,000.00 for the period ending ____________, 20_____. The Liquid Assets as at the end of such period is $___________.

3. No Default has occurred that is continuing, except for the following, as to which Borrower is taking the actions listed in order to cure such Default: If none, so state.

| DEFAULT | CURE ACTIONS |
|---|---|
| | |

4. Since the Closing Date and except as disclosed in prior Compliance Certificates delivered to Lender, neither Borrower nor any other Credit Party has:

Changed its legal name, identity, jurisdiction of incorporation, organization or formation or organizational structure or formed or acquired any subsidiary except as follows: __________________;

Acquired the assets of, or merged or consolidated with or into, any Person, except as follows: __________________________; or

Changed its address or otherwise relocated, except as follows: _____________.

Dated: ___________, 20__

**BORROWER REPRESENTATIVE:**

**TIG REAPER LLC**, a Delaware limited liability company

By:_______________________________________________
Manisha Patel, Member

By:_______________________________________________
Jiger Patel, Member

Before submitting this Compliance Certificate to the Lender, please attach the financial covenant compliance calculations at the end of the document.