# **Exhibit H**

Barnes & Thornburg

3340 Peachtree Road N.E., Suite 2900
Atlanta, GA 30326-1092 U.S.A.
(404) 846-1693
Fax (404) 264-4033

www.btlaw.com

Lisa Wolgast
Partner
(470) 832-7535
Lisa.Wolgast@btlaw.com

August 20, 2026

**VIA EMAIL** (jiger@tigcorp.com)
**AND FEDEX**
TIG Reaper LLC
Reaper Time NJ 1 LLC
Reaper Time PA 1 LLC
Reaper Time PA 2 LLC
Manisha Patel
406 Executive Drive
Langhorne, Pennsylvania 19047

**VIA FEDEX**
Manisha Patel
400 Foxcroft Drive
Warminster, Pennsylvania 18974

RE:

(a) That certain Term Loan A Note dated August 15, 2024 payable by TIG Reaper LLC, Reaper Time NJ 1 LLC (Reaper NJ"), Reaper Time PA 1 LLC ("Reaper PA 1"), Reaper Time PA 2 LLC ("Reaper PA 2", together with TIG Reaper LLC, Reaper NJ and Reaper PA 1, "Borrower") to Bank Midwest, a division of NBH Bank ("Lender") in the original principal amount of $1,650,000 (as amended and/or modified, the "Term Loan Note");

(b) That certain DLOC Note dated August 15, 2024 payable by Borrower to Lender in the original principal amount of $8,350,000 (as amended and/or modified, the "DLOC Note", together with the Term Loan Note, the "Notes");

(c) That certain Loan Agreement dated August 15, 2024 executed by Borrower and Lender (as amended and/or modified, the "Loan Agreement");

(d) That certain Security Agreement dated August 15, 2024 executed by Borrower in favor of Lender (as amended and/or modified, the "Security Agreement");

(e) That certain Guaranty dated August 15, 2024 (as amended and/or modified, the "Guaranty") executed by Manisha Patel ("Guarantor", together with Borrower, "Obligors") in favor of Lender;

(f) That certain Loan Assumption and First Modification Agreement dated November 14, 2025 (the "Loan Assumption Agreement") executed by Borrower and Lender (the Notes, Loan Agreement, Security Agreement, Guaranty, Loan Assumption Agreement and all documents executed in connection therewith and/or related thereto, as amended and/or modified, are collectively, the "Loan Documents")[1]

Ladies and Gentlemen:

As you know, this firm represents Lender with respect to the above-referenced Loan Documents.

You were previously advised in letters dated July 20, 2026 and July 22, 2026 that Events of Default occurred under the Loan Agreement and other Loan Documents because, *inter alia*: (a) Guarantor and Borrower failed to maintain aggregate Liquid Assets of at least $1,500,000 as of the most financial reporting delivered to Lender; (b) Borrower failed to maintain Lender as its principal depository bank, including for the maintenance of operating, administrative, cash management, collection activity, and other deposit accounts for the conduct of Borrower's business; and (c) Borrower created, incurred, assumed, permitted to exist, or otherwise became directly or indirectly liable with respect to any Indebtedness, other than the Obligations and trade indebtedness incurred in the ordinary course of business. The foregoing Events Default occurred and are continuing.

In addition to the foregoing Events of Default, Borrower is in default under the Loan Agreement and other Loan Documents because:

(1) Borrower's Q1 2026 and Q2 2026 financial reporting did not include a signed Compliance Certificate, as required by Section 4.15(g) of the Loan Agreement;

(2) Borrower failed to provide bank and brokerage statements evidencing the liquidity of Guarantor as of Q2 2026, as required by Section 4.15(a)(ii) of the Loan Agreement;

(3) Borrower's Q2 2026 financials reflect that Borrower had only $84,477 in cash on hand as of June 30, 2026, which is a significant reduction from the $536,369 that Borrower had as of December 31, 2025. Accordingly, it appears that the minimum Liquid Assets requirement was not satisfied for Q2 2026, as required by Section 4.15(g) of the Loan Agreement;

(4) Borrower's Q2 2026 financials reflects outstanding sales taxes of $424,125, evidencing a failure of Borrower to pay all taxes as and when due, as required by Section 4.3 of the Loan Agreement;

[1] Capitalized terms not defined herein shall have the meaning ascribed in the Loan Documents.

(5) Borrower failed to keep the Collateral free and clear of all liens, as evidenced by the UCC Financing Statement filed on January 22, 2026 by Corporation Service Company, in violation of Section 4.2 of the Loan Agreement; and

(6) Borrower's Q2 2026 financials reflects accounts payable of $2,311,900 for Q2 2026, thereby indicating that Borrower has failed to pay all Indebtedness, including trade debt, within 60 days of incurrence, in violation of Section 4.11 of the Loan Agreement.

Lender notes that, because Borrower failed to provide the required Compliance Certificates for Q1 2026 and Q2 2026 reporting, Borrower failed to report Borrower's compliance with the financial covenants set forth in Section 4.16 of the Loan Agreement. Lender reserves the right to assert additional Events of Default.

Please be advised that, notwithstanding Lender's receipt on or about July 20, 2026 and August 1, 2026 of payments in the amounts of $103,644.69 and $105,919.22, respectively, the indebtedness remains accelerated and due and payable in full and the foregoing mentioned Events of Default occurred and are continuing. Lender has no obligation to return the payments and such payments did not cure all Events of Default noted in my prior correspondence or noted above. If and to the extent that Borrower makes payments to Lender without tendering payment of all amounts owed under the Loan Documents, notice is hereby given that such payments will not cure the Events of Default, the indebtedness remains accelerated, and Lender reserves all rights and remedies under the Loan Documents. Lender reiterates its demand for payment by Borrower and Guarantor for all amounts owed under the Note, Guaranty and other Loan Documents.

We understand that Borrower may be pursuing a sale of its assets and that Borrower expects that such sale will generate proceeds greater than the amounts owed under the Loan Documents. As you are aware, Borrower's Affiliate, TIG Queso,[2] is also indebted to Lender pursuant to notes in the original principal amount of $20,000,000 (together with all documents executed contemporaneously therewith and/or related thereto, as amended and/or modified, the "Queso Loan Documents"). TIG Queso is in default under the Queso Loan Documents. As of July 22, 2026, an amount not less than $18,318,768.44 is due under the Queso Loan Documents, with interest and attorneys' fees and expenses continuing to accrue.

Pursuant to the Security Agreement, Borrower granted Lender a first-priority security interest in its assets "to secure the payment and performance of the Obligations, including all

---

[2] TIG Queso means and refers collectively to TIG QUESO LLC, QUESO TIME DE 1 LLC, QUESO TIME DE 2 LLC, QUESO TIME DE 3 LLC, QUESO TIME DE 4 LLC, QUESO TIME DE 5 LLC, QUESO TIME TPA1 LLC, QUESO TIME TPA2 LLC, QUESO TIME TPA3 LLC, QUESO TIME NJ 1 LLC, QUESO TIME NJ 10 LLC, QUESO TIME NJ 11 LLC, QUESO TIME NJ 12 LLC, QUESO TIME NJ 17 LLC, QUESO TIME NJ 2 LLC, QUESO TIME NJ 20 LLC, QUESO TIME NJ 3 LLC, QUESO TIME NJ 4 LLC, QUESO TIME NJ 5 LLC, QUESO TIME NJ 6 LLC, QUESO TIME NJ 9 LLC, QUESO TIME NJ 15 LLC, QUESO TIME NJ 18 LLC, QUESO TIME NJ 19 LLC, QUESO TIME NJ 21 LLC, QUESO TIME NJ 22 LLC, QUESO TIME NY 1 LLC, QUESO TIME NY 2 LLC, QUESO TIME NY 3 LLC, QUESO TIME NY 4 LLC, QUESO TIME PA 1 LLC, QUESO TIME PA 10 LLC, QUESO TIME PA 11 LLC, QUESO TIME PA 2 LLC, QUESO TIME PA 3 LLC, QUESO TIME PA 6 LLC, QUESO TIME PA 7 LLC, QUESO TIME PA 8 LLC, QUESO TIME PA 9 LLC, QUESO TIME PA 12 LLC, TIG QUESO NY LLC, TIG QUESO DE LLC, TIG QUESO NJ LLC, TIG QUESO PA LLC, TIG QUESO FL LLC.

Indebtedness under the Note and all Obligations with respect to the Related Agreements." (Security Agreement, § 3.) Similarly, in the Loan Agreement, Borrower acknowledged that the Collateral securing the Obligations owed under the Loan Documents also secures all Obligations under Related Agreements. (Loan Agreement, § 4.20.) Thus, Lender's first-priority lien on the Collateral pledged by Borrower secures not only the indebtedness owed by Borrower to Lender, but also the indebtedness owed under the Queso Loan Documents, Related Agreements, to Lender. Accordingly, the proceeds of any sale of Borrower's assets must be paid to Lender first, to satisfy the Obligations owed under the Loan Documents and second, to satisfy Obligations owed under the Queso Loan Documents. The fact that Borrower may have raised approximately $5,000,000 from "investors" does not negate Borrower's obligations to Lender or negate the fact that Lender has a first-priority security interest in the Collateral to secure Borrower's Obligations, including indebtedness owed under the TIG Queso Loan Documents. Lender rejects your counsel's statement that it is required to share proceeds of any sale of the Collateral with Borrower's "investors" or Manisha Patel prior to payment in full of all amounts owed under the Loan Documents and Queso Loan Documents. Please be advised that, Lender reserves the right to pursue all rights and remedies available to it under the Loan Documents and/or applicable law, including but not limited to filing suit against Borrower and/or for the appointment of a receiver.

Notice is hereby given that Lender intends to rely on the exact terms of the Loan Documents and demands exact compliance with all of the terms and conditions of the Loan Documents. To the extent that Lender, in the course of performance or execution of the Loan Documents, has departed from the terms thereof, or received money under such departure, notice is hereby given of Lender's intent to rely on the exact terms thereof. Neither this notice, any discussions by Lender with Obligors or their representatives, nor acceptance of any payment by Lender constitutes (a) a waiver of any default under the Loan Documents, whether or not referred to herein or in any prior notice of default, (b) an election of remedies with respect to any such default(s) by Lender, all of which are hereby reserved, (c) a waiver, modification, relinquishment or forbearance by Lender of any rights or remedies under the Loan Documents (or at law or in equity), all of which are expressly reserved, or (d) a modification of any of the Loan Documents. Receipt or retention of any payment of any indebtedness pursuant to the Loan Documents, including without limitation the payment noted herein above, shall not be deemed to waive any rights or remedies of Lender thereunder.

No modification of the Loan Documents and no other agreement or understanding of any nature shall be deemed to have been entered into by or be binding on Lender unless and until Lender and Obligors shall have reached agreement on all issues, and such agreement shall have been reduced to a written document that expressly states that it modifies the Loan Documents and is duly executed by Lender and Obligors.

Govern yourselves accordingly.

Sincerely,

Lisa Wolgast

cc:
**VIA EMAIL** (abelmont@bochettoandlentz.com)
**AND FEDEX**
Albert M. Belmont, III, Esq.
Bochetto & Lentz, P.C.
1524 Locust Street
Philadelphia, Pennsylvania 19102

**VIA EMAIL** (sputman@daveshotchicken.com, carolyne@daveshotchicken.com)
**AND FEDEX**
Dave's Hot Chicken Franchise Co., LLC
600 Playhouse Alley, Unit 504
Pasadena, California 91101
Attn: Scott Putman

Lisa Bonsall, Esq. (via email lbonsall@mccarter.com)
Ryan Durkin, Esq. (via email rjd@rdurkinlaw.com)
Joseph Lubertazzi, Esq. (via email JLubertazzi@McCarter.com)
Marisa Rauchway, Esq. (via email mrauchway@potomaclaw.com)
Nathan Haynes, Esq. (haynesm@gtlaw.com)