**Exhibit J**

Barnes & Thornburg

3340 Peachtree Road N.E., Suite 2900
Atlanta, GA 30326-1092 U.S.A.
(404) 846-1693
Fax (404) 264-4033

www.btlaw.com

Lisa Wolgast
Partner
(470) 832-7535
Lisa.Wolgast@btlaw.com

September 3, 2026

**VIA EMAIL** (jlubertazzi@mccarter.com)
Joseph Lubertazzi Jr., Esq.
McCarter & English, LLP
Four Gateway Center
100 Mulberry St.
Newark, NJ 07102

RE:

(a) That certain Term Loan A Note dated August 15, 2024 payable by TIG Reaper LLC, Reaper Time NJ 1 LLC (Reaper NJ"), Reaper Time PA 1 LLC ("Reaper PA 1"), Reaper Time PA 2 LLC ("Reaper PA 2", together with TIG Reaper LLC, Reaper NJ and Reaper PA 1, "Borrower") to Bank Midwest, a division of NBH Bank ("Lender") in the original principal amount of $1,650,000 (as amended and/or modified, the "Term Loan Note");

(b) That certain DLOC Note dated August 15, 2024 payable by Borrower to Lender in the original principal amount of $8,350,000 (as amended and/or modified, the "DLOC Note", together with the Term Loan Note, the "Notes");

(c) That certain Loan Agreement dated August 15, 2024 executed by Borrower and Lender (as amended and/or modified, the "Loan Agreement");

(d) That certain Security Agreement dated August 15, 2024 executed by Borrower in favor of Lender (as amended and/or modified, the "Security Agreement");

(e) That certain Guaranty dated August 15, 2024 (as amended and/or modified, the "Guaranty") executed by Manisha Patel ("Guarantor", together with Borrower, "Obligors") in favor of Lender;

(f) That certain Loan Assumption and First Modification Agreement dated November 14, 2025 (the "Loan Assumption Agreement") executed by Borrower and Lender (the Notes, Loan Agreement, Security Agreement, Guaranty, Loan Assumption Agreement

and all documents executed in connection therewith and/or related thereto, as amended and/or modified, are collectively, the "Loan Documents")[1]

Joseph:

I write in response to your August 25, 2026 letter to me and to follow up on our August 25, 2026 telephone conversation.

While your letter states that the Events of Default identified in my August 20, 2026 letter are "rejected," you failed to articulate any basis for such rejection in your letter or during our August 25 teleconference. "Rejection" of an Event of Default is not a legal defense and does not change that the Events of Default have occurred and are continuing. Borrower is in default and remains in default under the Loan Documents. Lender reserves all rights and remedies.

You similarly failed to articulate any reasoning behind your allegation that Lender's assertion that Borrower's assets secure the indebtedness owed by the TIG Queso borrowers is "wrongful and improper." The plain language of the Loan Documents that were executed by Borrower make clear that the lien granted to Lender pursuant to the Security Agreement secures the indebtedness owed by Borrower, as well as the indebtedness owed under Related Agreements. The Queso Loan Documents fall squarely within the definition of Related Agreements, and therefore, the amounts owed under the Queso Loan Documents are secured by Borrower's assets. Any allegation that Borrower has suffered damages as a result of Lender's position on cross-collateralization is completely baseless and Lender will not withdraw its assertion. To the contrary, Lender maintains that it is entitled to the proceeds of any sale of refinance of Borrower's assets in an amount not less than the indebtedness owed by Borrower and TIG Queso.

To the extent that you contend that such damages arise from the fact that Jiger Patel, as a manager and/or member of Borrower, refuses to or otherwise contends that he cannot or will not sell Borrower's assets without first paying his "investors", such contention is without merit. Mr. Patel's preference to pay "investors" ahead of Lender is contrary to the Loan Documents and applicable law. The mere fact that such investors exist is a further Event of Default under the Loan Documents, as Borrower is prohibited from amending its organizational documents in a manner that would have a Material Adverse Effect and from incurring additional Indebtedness, other than the Obligations and trade indebtedness in the ordinary course of business. (Loan Agreement, §§ 5.1, 5.12.) Regardless of whether the "investors" have equity in Borrower or made a loan to Borrower, they fall behind Lender in the order of priority of payment.

On our August 25 call, you stated that, if Lender files suit against Borrower or moves for the appointment of a receiver, Mr. Patel would "drive the value into the ground." Lender expects Borrower, by and through Mr. Patel, as a manager of Borrower, to pursue all options, including sale and/or refinance, to pay Lender in full, including payment of the indebtedness owed by TIG Queso borrowers, which is secured by Borrower's assets. Any action by Mr. Patel or others to drive value into the ground or otherwise destroy or impair the value of Borrower's business is a

[1] Capitalized terms not defined herein shall have the meaning ascribed in the Loan Documents.

clear breach of fiduciary duty. Notice is hereby given that Lender reserves all rights and remedies in the event that Borrower and/or Mr. Patel fail to comply with their fiduciary duties and monetary obligations to Lender.

You also stated that Borrower had received three expressions of interest regarding the purchase of Borrower's assets, but that the sales were in "limbo" or could otherwise not proceed because of Lender's position on cross collateralization (apparently because Borrower's "investors" would not be paid prior to Lender being paid in full). As discussed above, Lender is simply insisting that Borrower comply with its obligations under the Loan Documents. Borrower is not permitted to encumber or otherwise interfere with Lender's first-priority security interest in Borrower's assets (which secures amounts owed by Borrower and TIG Queso borrowers), and Borrower's and Mr. Patel's preference to pay subordinate investors over Lender is a clear breach of its fiduciary duty, for which Lender reserves all rights and remedies.

Finally, Borrower's accusation that Lender's communications and/or interactions with Dave's Hot Chicken Franchise Co., LLC ("Franchisor") were wrongful or interfere with the franchisor/franchisee relationship are baseless. Pursuant to the Franchisor Status Certificate and Consent (the "Franchisor Certificate") dated October 24, 2025, Lender is expressly permitted to request updated good standing certificates from Franchisor. The Franchisor Certificate further requires that Lender provide at least ten (10) days prior written notice to Franchisor before exercising any rights or remedies against Borrower's assets. Therefore, the fact that Lender sent written requests to Franchisor for good standing certificates and copied Franchisor on default notices prior to exercising any rights or remedies is not only authorized, but required, pursuant to the Franchisor Certificate.

Please let me know if you would like to discuss. Nothing herein waives or releases any of Lender's rights and remedies, all of which are reserved.

Sincerely,

Lisa Wolgast